JASON M. CONDER
Assistant United States Attorney
District of Wyoming
P. O. Box 449
Lander, Wyoming 82520
(307) 332-8195

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| **JOSHUA DALY,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Civil No. 12-CV-235-J |
| v. | ) | |
| | ) | Criminal No. 09-CR-73-J |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONSE TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255**

Petitioner/Defendant Joshua Daly ("Defendant") filed a motion to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255, claiming he received constitutionally ineffective assistance of counsel. In order to make this claim, the Defendant challenges the voluntariness of his guilty plea. The Defendant's true argument is that his federal sentence in this matter should run concurrently with the sentence he received on count three from the 7th Circuit Court, Flint, Michigan.

As outlined below, the Defendant's motion is irredeemably untimely and should be denied. However, as will also be discussed below, the United States has no objection to the court modifying the written Judgment to reflect its verbal pronouncement at sentencing, which was that the Defendant's federal sentence should run consecutively to counts one and four from the 7th Circuit

Court, Flint, Michigan, Docket Number 09-23291FH, but concurrently as to count three from the same court (*see* Sent. Trans. at 32).

## I. FACTUAL BACKGROUND

During the early morning hours of June 1, 2008, the Defendant, a convicted felon, drove a stolen truck through the entrance of Gillette Pawn & Guns, a federal firearms licensee, in Gillette, Wyoming (Revised Presentence Report "PSR" at 5). Once inside the Defendant got out of the truck and tried to break the glass case containing firearms (*Id.*). After failing in that effort, the Defendant tipped over the case and was able to remove and steal seven firearms (*Id.*). He then backed the truck out of the pawn shop and sped off (*Id.*).

During the early morning hours of July 18, 2008, the Defendant and another individual stole a truck and various personal items, including a firearm, from a home in Lapeer, Michigan (*Id.* at 5-6). Then later that same day in Flint, Michigan, the Defendant, while driving the stolen truck, was involved in a vehicle chase with police (*Id.*).

## II. PROCEDURAL BACKGROUND

On March 19, 2009, the Defendant was charged by indictment in the United States District Court for the District of Wyoming--for his conduct in Gillette on June 1, 2008--with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and stealing firearms from a licensed federal firearms dealer, in violation of 18 U.S.C. § 924(m) (Clerk's Docket, Doc. 1).[1]

[1] Clerk's Docket refers to the Criminal Docket for case number 09-CR-73J, and will hereinafter be referenced simply as "Doc." and the corresponding document number.

However, prior to the issuance of federal charges in Wyoming, the Defendant was charged in both Flint and Lapeer, Michigan, for his respective conduct in those places on July 18, 2008.

Specifically, on July 18, 2008, in the 7th Circuit Court, Flint, Michigan, in Docket Number 08-23291FH, the Defendant was charged with: unlawfully driving away an automobile (count one); receiving and concealing a stolen motor vehicle (count two); felon in possession of a firearm (count three); and fleeing and eluding police (count four) (Revised PSR at 12, ¶ 27). As to these charges, the Defendant appeared before the 7th Circuit Court in Flint, Michigan, on August 11, 2008, and pleaded guilty to counts one, three, and four, and the state dismissed count two (*Id*.). Then, on September 17, 2008, the Defendant again appeared before the court in Flint, Michigan, and was sentenced to not less than eighteen months and not more than sixty months custody for counts one, three, and four (*Id*.).

Also on July 18, 2008, the Defendant was charged in the 40th Circuit Court, Lapeer, Michigan, Docket Number 08-2064, with 2nd degree home invasion (Revised PSR at 12, ¶ 28). The Defendant appeared before the 40th Circuit Court in Lapeer, Michigan, on April 17, 2009, and pleaded no contest, and was scheduled for sentencing on October 19, 2009 (*Id*.). However, on April 30, 2009, in the federal case in Wyoming, the United States obtained a Writ of Habeas Corpus ad Prosequendum, which ordered the Defendant to be brought from state custody in Michigan, into federal custody in the District of Wyoming to answer the charges contained in the March 19, 2009, indictment (Doc. 5, 6, 7).

The Defendant made his initial appearance in the District of Wyoming on May 29, 2009, and pled not guilty to the charges (Doc. 8, 9, 10). Then, on July 10, 2009, the parties filed a written plea

agreement, pursuant to which the Defendant agreed to plead guilty to count one of the March 19, 2009, indictment alleging felon in possession of a firearm (Doc. 17). The plea agreement also contained a stipulation with respect to certain relevant conduct under the sentencing guidelines, but there was no mention regarding the impact of the Defendant's convictions in Flint or Lapeer, Michigan (Doc. 17). The Defendant, with counsel, appeared before this court on July 13, 2009, and pleaded guilty to being a felon in possession of a firearm (Doc. 18). At this hearing, the Defendant was advised of the maximum punishment provided by statute, the potential punishment provided by the advisory sentencing guidelines, as well as specific provisions of relevant conduct outlined in the plea agreement--all of which the Defendant indicated he understood (Doc. 17; Change of Plea "COP" Trans. at 2-3, 6-11). During his change of plea hearing, the Defendant informed the court that the plea agreement contained all of the promises he received from the government, that he was pleading guilty of his own free will, that no one had forced or threatened him to plead guilty, that no other promises of special favor, leniency or benefit had been made to cause him to plead guilty, and that he was pleading guilty pursuant to the plea agreement because he was in fact guilty (COP Trans. at 5-6, 18). He also indicated he was satisfied with the work of his attorney (COP Trans. at 5).

On September 28, 2009, the Defendant appeared before this court and was sentenced to 65 months incarceration (Doc. 22, 23). At sentencing, the government, counsel for the Defendant, and the court discussed whether this federal sentence should run consecutively with the sentence imposed by the court in Flint, Michigan (Sent. Trans. at 8-16). In particular, the government

indicated it was requesting that the federal sentence run consecutively only to count one (unlawfully driving away automobile) and count four (fleeing and eluding police) from the Flint, Michigan court, and not count three (felon in possession) (Sent. Trans. at 13-15, 32; Revised PSR at12 ¶ 27). All of this was specifically recognized and accepted by the court (Sent. Trans. at 13-15, 32). In particular, when the court was imposing the consecutive sentence, the government stated: "And, Your Honor, I'm pretty sure that you said in terms of the consecutive sentence to the paragraph 27 [of the Revised PSR] that is Docket 08-23291 FH [Flint, Michigan], that the consecutive was to count 1 and Count 4, but not to Count 3, the felon in possession" to which the court responded: "That is correct" (Sent. Trans. at 32).

The written Judgment in this case was filed on October 1, 2009, and it imposed the 65 month federal sentence, which was to be served consecutively with counts one and four from the 7th Circuit Court, Flint, Michigan (Doc. 23). The written Judgment was silent as to count three of the Flint, Michigan case (Doc. 23). The Defendant did not file an appeal and his conviction became final ten business days after the judgment was filed, or on or about October 15, 2009. The Defendant signed his instant motion on September 30, 2012, and it was filed with this court on October 19, 2012.

## III. DEFENDANT'S ARGUMENT

The Defendant couches his argument as one of constitutionally ineffective assistance of counsel surrounding the entry of his guilty plea, namely that his plea was involuntary. Then, in conclusory fashion, the Defendant sets forth a number of specific allegations, claiming that he was "forced into the plea agreement," that his attorney did not put him in the "best position" after the

plea, that his attorney should have advised him as to the possible outcome of the plea, his attorney did not advise him of "sentencing possibilities," and his attorney was not "honest" with him (Clerk's Docket, Case # 12-CV-235, Doc. 1, p. 12). However, it is clear that the Defendant's true claim is that his federal sentence is not actually being run concurrently to count three of his Flint, Michigan sentence (Clerk's Docket, Case # 12-CV-235, Doc. 1, 2).

The Defendant maintains that shortly after his federal sentencing hearing, he was returned to Michigan to finish the remainder of his state sentence, and did not return to federal custody until January 18, 2011 (Clerk's Docket, Case # 12-CV-235, Doc. 2, p. 2). The Defendant then states that by the end of February 2011, the Federal Bureau of Prisons was not running his federal sentence concurrently with count three of his Flint, Michigan sentence, and as a result he made several attempts through Bureau of Prisons administrative processes to correct this. However, the Defendant maintains the Bureau of Prisons insists on running it consecutively as the Judgment was silent as to count three (Clerk's Docket, Case # 12-CV-235, Doc. 2, p. 2-3).

Here, the Defendant's § 2255 motion is woefully late. The Defendant filed his motion nearly two years after his conviction became final, and even giving him every possible benefit (entitled or not), his motion is inexcusably late. Yet even if his claim was on time, the record shows he was fully informed of the possible punishment, sentencing impacts, and there is no showing counsel was deficient. Although the Defendant's motion is late, and entirely without merit as to the claim of ineffective assistance of counsel, the United States has no objection to the Judgment in this case being modified to reflect the court's verbal pronouncement at sentencing, which was, that although

the federal sentence in this matter run consecutively to counts one and four of the Flint, Michigan case, that this federal sentence be run concurrently to count three of that Flint, Michigan case (*see* Sent. Trans. at 32).

**IV. <u>28 U.S.C § 2255</u>**

Title 28 U.S.C. § 2255 may provide a federal prisoner relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. However, § 2255 also provides, among other things, that:

> "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of -
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by government action in violation of the constitution or laws of the United States is removed, if the movant was prevented by making such a motion by such government action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

For purposes of applying the one year limitation period established by § 2255, a defendant's conviction is final when the district court has filed its judgment and when his right to further appeal that judgment has been exhausted. *Griffith v. Kentucky*, 479 U.S. 314, 321 n. 6 (1987); *United States v. Burch*, 202 F.3d at 1278; *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Here, the Defendant's conviction became final for purposes of applying § 2255's one year limitation period on or about October 15, 2009, the day on which his right to file a direct appeal expired. *See United States v. Prows*, 448 F.3d 1223, 1227-28 (10th Cir. 2006). Therefore, at least in the absence of his showing the presence of circumstances that would allow him to invoke one of the other three bases for calculating when his year began to run, the Defendant's one year limitation period for filing his initial § 2255 motion would have expired on or about October 15, 2010. Since the Defendant's initial motion was actually "filed"[2] on September 30, 2012, nearly two years late, it must, in the absence of such other circumstances, be dismissed. *See, e.g.*, *United States v. Simmonds*, 111 F.3d 737, 746-47 (10th Cir. 1997), overruled on other grounds by *United States v. Hurst*, 322 F.3d 1256 (10th Cir. 2003). And here, the Defendant has alleged no such "other circumstances."

For example, the Defendant has not claimed that his filing a timely motion under § 2255 was in any way illegally or unconstitutionally impeded by government action, he has not invoked

---

[2]For purposes of argument, the government will assume the "legal" filing date for the Defendant's § 2255 motion was September 30, 2012, which was the day on which he appears to have signed it. *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (court may treat as "filing date" for habeas petition the date on which defendant actually signed petition and presumably delivered it into the hands of prison officials for mailing).

application of any new Supreme Court decision, nor has he raised a claim based upon newly discovered evidence or facts, and he does not claim actual innocence. *See Browning v. United States*, 241 F.3d 1262, 1266 (10th Cir. 2001); *See Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998). Thus, in order for his § 2255 motion to be timely, it had to have been filed within one year of October 15, 2009, or by October 15, 2010. *See Hurst*, 322 F.3d at 1259-60.

Because the Defendant's motion was filed on or about September 30, 2012, nearly two years after the applicable expiration period, his filing of a § 2255 motion is time-barred, absent the existence of some "rare and exceptional circumstance" justifying invocation of the doctrine of equitable tolling. "Equitable tolling" of § 2255's one year limitation is appropriate only where there is some exceptional and unusual circumstance that either prevented the Defendant from making a timely filing or otherwise reflects a compelling reason to excuse a late filing. Such circumstances might include government action which interfered with the Defendant's good faith effort to file a timely motion, a situation where the Defendant in fact pursued his judicial remedies diligently, but fell short only because of an inadvertently defective pleading, or where the Defendant makes a clear showing of actual innocence. *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000).

Here, the Defendant has shown no such exceptional circumstances. The Defendant summarily argues that his lack of academic prowess and allegedly sub-par intelligence should somehow permit an exception. Yet, this argument is belied by the Defendant's own recognition that in February of 2011, he noticed the Bureau of Prisons was not applying the sentence as he thought it should, and at that time he took a number of steps with the Bureau of Prisons in an effort to

remedy that situation (Clerk's Docket, Case # 12-CV-235, Doc. 2, p. 2-4). Nonetheless, for the sake of argument, even if it were somehow viewed that his time for filing a § 2255 motion did not start until he actually realized his sentence was not being imposed as he believed it should be, that was by his own admission February 2011 (Clerk's Docket, Case # 12-CV-235, Doc. 2, p. 2-4). Thus, under that scenario, in order to be timely his motion would have to have been filed by early March 2012, at the very latest. However, this did not happen. The Defendant did not file his motion until September 30, 2012, which would still be well beyond the one year time period. Simply put, the Defendant's motion is irredeemably untimely, and as such must be dismissed.

***Ineffective Assistance***

Solely for the sake of argument, even if the Defendant could somehow show that his motion was timely or should be considered on the merits, the record demonstrates counsel was in no way deficient nor did the Defendant suffer any prejudice. It is accepted that a guilty plea "may be involuntary where an attorney materially misrepresents the consequences of the plea; however, standing alone, an attorney's erroneous sentence estimate does not render a plea involuntary." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) *citing Laycock v. New Mexico*, 880 F.2d 1184, 1186 (10th Cir. 1989). Conversely, a guilty plea is valid if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Hill v. Lockhart*, 474 U.S. 52, 55 (1985).

Thus, to prove ineffective assistance of counsel, in the context of challenging a guilty plea, the defendant must show: (1) his attorney's performance was deficient, and (2) the deficient

performance prejudiced his defense, meaning that but for counsel's deficient performance, there is a reasonable probability that the outcome of a proceeding involving the defendant would have been different--i.e., but for the deficiency he would have plead not guilty and gone to trial. *Strickland v. Washington*, 466 U.S. 668 (1984); *Hill v. Lockhart*, 474 U.S. 52, 55 (1985); *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005). In order for a defendant to prove counsel's performance was deficient, the defendant must show the attorney's performance was not within the wide range of competence demanded of attorneys in criminal cases. *Laycock v. State of New Mexico*, 880 F.2d 1184 (10th Cir. 1989). Additionally, even a pro se defendant must do more than simply offer conclusory allegations; he must make particularized and specific factual averments which, if proven, would demonstrate both the ineffectiveness of the attorney's performance and the resulting prejudice to the case. *Hatch v. State of Okla.*, 58 F.3d 1447, 1457 (10th Cir. 1995); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

Measured against these standards, it is clear the Defendant's motion cannot be sustained. First, the Defendant has done nothing more than provide vague, conclusory, and unsupported allegations of "deficiency." The Defendant claims counsel was not honest with him, yet there is no argument or support, just an allegation. He also claims he was promised a certain sentence by counsel, yet again, there is no support for such a claim. Yet even if the record were to show such a "promise," the mere fact counsel provided an incorrect sentencing estimate is not grounds to declare the Defendant's plea involuntary. *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) ("an attorney's erroneous sentence estimate does not render a plea involuntary") *citing*

*Laycock v. New Mexico*, 880 F.2d 1184, 1186 (10th Cir. 1989). This is especially so here, where the court expressly informed the Defendant he could not withdraw his plea just because he may receive a sentence he does not anticipate or like, and the Defendant affirmatively acknowledged this concept (COP Trans. at 7-8).

Additionally, the record belies all of the alleged deficiencies claimed by the Defendant. As to his claim that he "was forced into the plea agreement" (Clerk's Docket, Case # 12-CV-235, Doc. 2, p. 2-4), the Defendant's own statements and the record show this is not true. At his change of plea hearing the court directly asked if the Defendant had been forced or threatened into entering the plea agreement, or if promises outside the plea agreement or matters discussed on the record had been made or caused him to enter his plea–in response the Defendant indicated no such thing had occurred (COP Trans. at 6, 18). Further, the court after conducting the required plea colloquy specifically found the Defendant's plea was knowing and voluntary (COP Trans. at 6, 18, 20), a finding which was accurate based upon the record. After the Defendant was informed of the terms of the plea agreement, the potential punishment, and the impact of his plea agreement, the Defendant at every turn indicated affirmatively that he understood these things, and at no time did he voice concern or displeasure with counsel or the potential sentence, nor did he ever even raise the issue of concurrent versus consecutive sentences (COP Trans. at 2-3, 5-11, 13-15, 17-20).

As to his claim that he was not advised of the outcome of the plea or sentencing possibilities, the Defendant indicated that he had in fact discussed the plea agreement (which included the sentencing possibilities) with his attorney and that he was satisfied with his attorney (COP Trans.

at 5-6). Further, the government as well as the court fully advised the Defendant of the possible sentencing outcomes of his plea, and he was specifically advised several times of the maximum punishment provided by statute, the potential punishment provided by the advisory sentencing guidelines, specific provisions of relevant conduct, and his constitutional rights, all of which the Defendant indicated he understood (COP Trans. at 2-3, 6-11, 13-15, 18, 20 ). Simply put, the record shows the Defendant was not forced into the plea agreement, he was advised of the impact of his plea of guilty, and, most importantly, his potential sentence. As such, the court correctly found that the plea was "voluntarily made with knowledge of the direct consequences of the plea" and that it was not made by force, threat or improper promise, and was made with the assistance of able and competent counsel (COP Trans. at 21-22).

Moreover, even if Defendant's counsel were somehow viewed as being deficient, there has been no showing of prejudice. To determine whether the deficient performance resulted in prejudice, the Defendant must show more than a theoretical effect on the outcome of his case as a result of his attorney's errors. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Defendant must show that, but for those errors, there is a reasonable probability that the results would have been different, that is the Defendant would have pleaded not guilty and insisted on going to trial. *Hill v. Lockhart*, 474 U.S. at 59; *Strickland v. Washington*, 466 U.S. at 694; *Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996); *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005). The Defendant has made no such showing, and considering the facts and circumstances of the record, his plea was a voluntary and intelligent choice. In his motion he has done nothing more than manufacture specious

allegations of deficiency. This appears to be more of an effort to show that his sentence is being wrongly applied by the Bureau of Prisons, and not that counsel was actually ineffective.

***Judgment-Consecutive/Concurrent***

As noted the October 1, 2009, written Judgment in this case imposed 65 months of imprisonment to be served consecutively to the sentence imposed as to counts one and four from the 7th Circuit Court, Flint, Michigan, but, it was silent as to count three (Doc. 23; Revised PSR at 12 ¶ 27). Silence as to this issue is generally deemed to result in a consecutive sentence. “Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.” 18 U.S.C. § 3584(a). When a court remains silent as to the issue, the subsequent sentence will be imposed consecutively. *See United States v. Eccleston*, 521 F.3d 1249, 1254 (10th Cir. 2008); *see also United States v. Williams*, 46 F.3d 57, 58-59 (10th Cir. 1995) (“[w]hether to impose a consecutive or concurrent sentence is a matter within the discretion of the district court,” yet as provided by § 3584(a), “multiple terms of imprisonment imposed at different times will normally run consecutively, unless the district court affirmatively orders that the terms be served concurrently”).

However, the court’s oral pronouncement at sentencing was not silent on count three, and it is well accepted that the orally pronounced sentence controls over a written judgment when the two conflict. *See United States v. Bowen*, 527 F.3d 1065, 1080 (10th Cir. 2008). A review of the sentencing transcripts indicate that the court intended the federal sentence to run concurrently to count three, and consecutively as to counts one and four (Sent. Trans. at 8-9, 12-16, 27-28, 32).

Specifically, the government, counsel for the Defendant, and the court discussed whether this federal sentence should run consecutively with the sentence imposed by the court in Flint, Michigan (Sent. Trans. at 8-16, 27-28, 32). In particular, the government indicated it was requesting that the federal sentence run consecutively only with count one (unlawfully driving away automobile) and count four (fleeing and eluding police) from the Flint, Michigan court, and not count three (felon in possession) (Sent. Trans. at 13-15, 32; Revised PSR at 12 ¶ 27). All of this was specifically recognized and accepted by the court (Sent. Trans. at 14-16, 32). In fact the court stated "I believe the expectation is that the sentence be imposed as a consecutive sentence, and the Court will accede to that request." (Sent. Trans. at 16).

There was some ambiguity on this issue when the court stated that the judgment of court was for the Defendant to be committed for a term of imprisonment of 65 months "to be served consecutively to the undischarged term of imprisonment from the Seventh Circuit Court, Flint, Michigan, Docket No. 08-23291 FH." (Sent. Trans. at 27-28). However, this ambiguity was short lived, as the government at the conclusion of the court's pronouncement stated: "And, Your Honor, I'm pretty sure that you said in terms of the consecutive sentence to the paragraph 27 [of the Revised PSR] that is Docket 08-23291 FH [Flint, Michigan], that the consecutive was to count 1 and Count 4, but not to Count 3, the felon in possession," to which the court responded: "That is correct" (Sent. Trans. at 32).

Therefore, the federal sentence was to run concurrently with count three from the Flint, Michigan case and consecutively to counts one and four. Since the orally pronounced sentence

controls over a written judgment when the two conflict, *see United States v. Bowen*, 527 F.3d 1065, 1080 (10th Cir. 2008), the United States has no objection to the court modifying the written Judgment in this case to reflect the oral pronouncement that the 65 months of imprisonment in this case should be run consecutively to counts one and four from the Flint, Michigan case, but that it should be run concurrently as to count three from the same Michigan case.[3]

## VI. CONCLUSION

The Defendant's motion was filed well beyond the one year period of limitations as set forth by § 2255 and should therefore be dismissed. Nonetheless, the government has no objection to the written Judgment in this case being modified to reflect the court's oral pronouncement at sentencing.

**DATED** this 8th day of January, 2013.

Respectfully submitted,

CHRISTOPHER A. CROFTS
United States Attorney

By: */s/Jason M. Conder*
Jason M. Conder
Assistant United States Attorney

---

[3]It should be noted that even with this recognition as to count three the United States is wholly unaware of the actual impact this may or may not provide the Defendant, because the United States is unaware of the specific sentences the Defendant received on each particular count from the Flint, Michigan case. The only information available to the government at sentencing, and now, is the Revised PSR, which on page 12, paragraph 27, notes the Defendant's state sentence of not less than eighteen months and no more than sixty months was connected to all three counts, not just to one particular count. Accordingly, any modification of the written Judgment may simply have the academic effect of aligning the written judgement with the court's oral pronouncement.

**CERTIFICATE OF SERVICE**

This is to certify that on the 8th day of January, 2013, I served a true and correct copy of the foregoing **RESPONSE TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255** upon the following by depositing the same, postage prepaid, in the United States mail, addressed to:

Joshua Daly
Prisoner No. 11054-091
Federal Correctional Complex II
PO Box 3850
Adelanto, CA 92301

*/s/Jason M. Conder*
UNITED STATES ATTORNEY'S OFFICE